# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAURICIO RODRIGUEZ CELIS, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 14-2998 |
| ) | |
| NORTHWESTERN UNIVERSITY ) | Honorable Sara L. Ellis |
| SCHOOL OF LAW ) | Magistrate Judge Susan E. Cox |
| ) | |
| and ) | |
| ) | |
| INSTITUTO DE EMPRESA, S.L., ) | |
| Defendants. ) | |

## NORTHWESTERN'S MEMO IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND LIMITED INJUNCTION

### I. INTRODUCTION

This case does not involve an emergency. Northwestern University School of Law (Northwestern) jointly offers, with Instituto de Empresa ("IE") in Spain, an Executive Master of Law Program ("Program"). After Northwestern and IE confirmed that Mauricio Rodriguez Celis ("Celis") made material misrepresentations and omissions during the application process relating to his recent convictions for the unauthorized practice of law and for falsely identifying himself as a peace officer, they jointly rescinded his admission to, and expelled him from, the Program.

Asserting that he should not be held accountable for these misrepresentations because no one specifically asked him to disclose his prior convictions, Celis claims breach of contract and contends that he will suffer irreparable harms for which he cannot adequately be compensated if he cannot complete the Program by commencing the final three courses this week. This purported harm is anything but imminent. It consists of the potential loss of a phantom job offer from a Mexican law school, which is purportedly contingent upon completion of the Program but has no discernable start date; and personal embarrassment about not graduating in May, a form of damages that is not even recoverable in a contract action.

Just as importantly, Northwestern offers courses that would satisfy the requirements of the Program in May, June, July, and beyond, such that there is no emergency requiring Northwestern to permit Celis to attend class this week. Indeed, Northwestern would be harmed were it required to permit Celis to attend class for the purpose of obtaining an LLM from its Law School. Northwestern has the inherent right to make the academic decisions about those students upon whom it will confer degrees, subject only to refraining from caprice or discrimination, neither of which are alleged here. Thus, Celis's motion must be denied.

## II. FACTUAL BACKGROUND

### A. NU/IE Executive LLM Program And Admissions Requirements

Northwestern University's School of Law is a pre-eminent institution for legal education. (Ex. 1, Declaration of James Speta (hereinafter "Speta Dec.") at ¶ 2.) The School of Law offers a variety of degree programs, including an executive Master of Law ("LLM") program through a partnership with IE in Madrid, Spain. (Speta Dec. at ¶ 3.) Graduates receive an LLM degree from Northwestern University School of Law and a certificate from IE. (Id. at ¶ 4.)

Prospective students apply through IE's website. (Speta Dec. at ¶ 5.) Applicants are required to attach documentation to the application including, among other things, a Curriculum Vitae and personal statement. (Speta Dec. at ¶ 5, Ex. A, IE Application Website.) A personal interview is a required part of the application process. (Speta Dec. at ¶ 6.) The interview's "main objective" is "to fully understand the candidate's professional background, experience and exposure, to assess the candidate's abilities to interact." (Id.) The final phase of the admissions process is the "Final Decision," in which the "overall application will be reviewed by the Admissions Committee, which decides whether to admit or deny admission to the candidate." (Id. at ¶ 7, Ex. A.)

2

B.     <u>**Celis Is Convicted For Falsely Holding Himself Out As A Lawyer And Officer**</u>

In 2009, Celis was tried by jury and convicted of falsely holding himself out as a lawyer in violation of section the Texas Penal Code. (Speta Dec. at ¶ 18, Exs. F, G, *Celis v. State*, 354 S.W.3d 7, 15-16 (Tex. App. 2011) *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013).) The evidence at trial established that Celis held himself out as a lawyer with CGT Law Group International, LLP ("CGT"), a law firm located Texas and founded by Celis, but was never licensed to practice law in Texas or any other jurisdiction, including Mexico. (Id.) After appeal, Celis's conviction was affirmed[1] in 2011. Celis was also convicted of falsely holding himself out as a peace officer, and the Texas Court of Appeals affirmed that conviction in 2013. (Id., Ex. H, *Celis v. State*, 2013 WL 1189007 (Ct. App. Tex. March 21, 2013).)

C.     <u>**Celis's Application For Admission To The ExLLM Program And Enrollment**</u>

Celis applied for admission to the Program in or around summer 2012 seeking admission to the class of 2014. (Speta Dec. at ¶ 8.) However, his application made no mention of his unauthorized practice of law or convictions. (Id. at ¶¶ 11-15.) Celis completed the online application form through IE's website and attached all of the required documentation. (Id. at ¶ 9. Exs. B through D, Application Form, Transcripts and CV.)

Celis described a variety of information in response to the application's questions about his professional experience. For instance, he indicated that he was currently the President and CEO of two companies he founded in Corpus Christi, Texas. (Id.) Celis also indicated that from November 2004 to November 2006 (prior to his law degree) he worked as a "Partner" for CGT in Washington DC and Mexico City; notably, Celis did not identify Texas as a state where he worked for CGT. In the space provided for Celis to describe his duties and responsibilities for CGT, Celis stated

---

[1]     Celis subsequently petitioned for discretionary review from the Texas Court of Criminal Appeals, which granted review, but affirmed his conviction. *Celis v. State,* 416 S.W.3d 419 (Tex. Crim. App. 2013).

3

"[o]ffice and case manager in Latin America." (Id.) Celis did not mention that he held himself out as a lawyer or engaged in the unauthorized practice of law while employed by CGT. (*See* id.)

In response to the question, "[h]ow do you want to direct your professional career in each of these levels during the months after finishing your Master's Degree," Celis indicated that he that he wanted to stay in his current area and country (i.e., Corpus Christi, Texas, USA), and that he wanted to stay at his current level of responsibility at his current organization (i.e., President/CEO of MC-Caloco and Celis Oils & Gas.) (Id.) He made no mention of an offer to teach Constitutional Law at a university in Mexico. Celis also attached a personal statement which did not contain any mention of his activities at CGT or his convictions, nor his purported desire to pursue a legal teaching career. (Speta Dec. Ex. D, Celis Personal Statement.)

On December 13, 2012, Celis was interviewed by Northwestern's Director of its ExLLM Programs, Janet Garesche ("Garesche"). (Speta Dec. at ¶¶ 10-12, Ex. E, Interview Report.) Garesche interviewed Celis for approximately 35 minutes over the phone, during which time they discussed his professional background. Celis informed Garesche that he was currently an attorney in Mexico with his own practice. (Id.) At no point during the interview (or throughout the entire application process) did Celis disclose that he practiced law without a license in Texas and was convicted for doing the same. Nor did he indicate that he had an offer of employment from a Mexican law school that was contingent upon completion of the Program.

Based in part on Celis's misleading description of his professional experience and failure to fully disclose his relevant criminal background, Celis was admitted to the Program and entered into an Enrolment Contract (the "Contract") with IE. (Am. Celis Dec. at Ex. 2, Enrolment Contract.) Per the Contract, "[a]ny materially false or misleading statement, whether by act or omission, **during the admissions process** ... shall also be considered cause for expulsion from the program." (Id.) The consequences for these actions are "the loss of the right to attend class, the loss of the right

4

to receive the corresponding degree and/or certificate for the respective program." (Id.)

**D.    NU/IE's Decision To Rescind Celis's Admission To The Program**

In late 2013 or early 2014, it came to the attention of James Speta ("Speta"), Senior Associate Dean for Academic Affairs and International Initiatives, and Director of Executive LLM Programs at Northwestern, that Celis had been convicted of falsely holding himself out as a lawyer, among other crimes. (Speta Dec. at ¶ 17.) After investigation and consultation between IE and Northwestern, Justin Swinsick ("Swinsick"), Executive Director of International Programs for IE, informed Celis by letter of its concerns about his application materials. (Id. at ¶¶ 17-20, Ex. I.) Swinsick notified Celis that both institutions believed he made false and misleading statements and omissions, and that if the information were known at the time of his application, he would not have been admitted. (Id.)

In the ensuing weeks Celis was given several opportunities to meet in person and over the phone to explain, and was also given an opportunity to respond in writing, which he did. (Speta Dec. at ¶ 21, Ex. J.) Northwestern and IE did not find Celis's explanations persuasive. Nevertheless, Northwestern offered Celis several potential options for resolution, all of which he rejected. Accordingly, on April 24, 2014, Speta sent Celis a letter informing him that the internal processes had concluded and that Celis would not be permitted to attend additional classes.[2] (Speta Dec. at ¶ 23, Ex. K; Am. Celis Dec. Ex. 6, 4/24/14 Letter.)

## ARGUMENT

It is well-settled that the burden on a plaintiff seeking preliminary injunctive relief is to establish by a "clear showing" that: "(1) his case has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm if the injunction is not granted." *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) (denying

---

[2]    Northwestern made a subsequent attempt at resolution on April 25, 2014, which Celis rejected. (Speta Dec. at ¶ 23.)

motion for TRO brought by high school student suspended from participating in athletics). If the Court is satisfied that these requirements have been met, then it must "consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id.* The movant bears the burden of persuasion with regard to each factor, and if the movant fails to meet just one of the prerequisites, the injunction must be denied. *Cox v. City of Chicago,* 868 F.2d 217, 222 (7th Cir. 1989). In determining whether to grant or deny a request for a temporary restraining order, courts are guided by the principle that "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Illinois Dept. Fin. & Profess. Reg.*, 430 F.3d 432, 437 (7th Cir. 2005).

A. <u>Celis Has Not Demonstrated That He Is Likely To Succeed An The Merits</u>

   *1. Northwestern's Decision to Rescind Celis's Admission to The Executive LLM Program Was An Academic Decision Entitled To Judicial Deference*

Celis has not established a likelihood of success on the merits because Northwestern is not a party to the Contract.³ Regardless, Northwestern's decision to revoke his admission is an academic decision entitled to judicial deference. The Seventh Circuit has found academic dismissals are entitled to deference where a student's conduct reflects on the personal qualities necessary to succeed in the field in which he or she is studying and is based on subjective appraisal of those qualities. For instance, the Seventh Circuit had "no difficulty" deciding that a medical resident was dismissed for academic reasons because he failed to disclose, on his application, an earlier dismissal from another residency program. *See Fenje v. Feld,* 398 F.3d 620, 625 (7th Cir. 2005). This omission undermined "his future credibility as a source of information concerning the care of seriously ill patients." *Id.* The dismissal represented "an academic judgment by school officials,

---

³ Because, as Celis acknowledges, Northwestern is not a party to this Contract, he has no breach of contract claim against it. Under Illinois law, only parties to a contract can be liable for breach. *See Odeluga v. PCC Cmty. Wellness Ctr.*, 12-CV-07388, 2013 WL 4552866, *4 (N.D. Ill. Aug. 27, 2013).

expert in the subjective evaluation of medical doctors[.]" *Id.* Similarly, in *Martin v. Helstad*, a student's admission to law school was appropriately revoked because he had failed to disclose his criminal history on his application. 699 F.2d 387 (7th Cir.1983).

This case is very similar to *Stockstill v. Quinnipiac University*, 3:10-CV-265 (VLB), 2010 WL 2011152 (D. Conn. May 19, 2010). Stockstill's admission to Quinnipiac was rescinded for failure to disclose material information about his probation status. Stockstill challenged the decision based on breach of contract and promissory estoppel theories and sought a preliminary injunction. Like Celis does here, Stocksill argued that he was likely to succeed on the merits of his breach of contract claim because Quinnipiac offered him admission, he accepted, he fulfilled his contractual obligations by paying tuition and attending classes, and Quinnipiac then breached its admissions contract with him by rescinding his admission. *Id.* at *6. However, the court held that plaintiff was not likely to succeed on the merits, specifically recognizing that "an educational institution's academic decisions involve the exercise of professional judgment to which courts should defer." *Id.* at *7 (internal citations and quotations omitted).

Given this deference, in order to maintain a contract action against Northwestern based upon an academic decision, Celis must show that the decision "was made arbitrarily, capriciously, or in bad faith." *Id.* (internal citations omitted). He has made no such showing. Rather, it is clear that Northwestern's decision to expel Celis from the Program was an academic decision that was substantially justified given Celis's misrepresentation of his professional background and his failure to disclose the fact that he was criminally convicted for practicing law without a license. These misleading statements are obviously directly and closely related to his qualifications for admission to and graduation from Northwestern. Northwestern clearly has a legitimate interest in ensuring that the lawyers to whom it confers law degrees are honest and ethical in their profession. Thus, this Court should not interfere with Northwestern's academic decision to revoke Celis's admission.

7

### 2. *Northwestern Had Cause to Expel Celis From The Program Per The Contract*

Even if Northwestern were a party to the Contract, Celis is unlikely to succeed because there was no breach. Northwestern was entitled to rescind its admission decision and expel Celis from the Program based on his false and misleading statements and omissions. The tenth clause of the Contract[4] unambiguously provides that "[a]ny **materially false or misleading statement**, whether by act or omission, **during the admissions process** ... shall also be considered cause for expulsion from the program." (Am. Celis Dec. at Ex. 2) (emphasis added).) A statement of material fact is one upon which the other party could reasonably rely in determining whether or not to act. *Jeffrey M. Goldberg & Associates, Ltd. v. Collins Tuttle & Co., Inc.*, 264 Ill. App. 3d 878, 885 (1994); *see also* Restatement (Second) of Contracts § 167, at 453 (1981) ("a misrepresentation induces a party's manifestation of assent if it substantially contributes to his decision to manifest his assent").

Celis's hyper-technical and misguided argument that he was not obligated to provide accurate information about his work history or to disclose his criminal convictions is based on his inaccurate assertion that the application process to the Program consisted solely of an "Application Form ... and an interview to assess his language proficiency." (Comp. at ¶ 13.) He argues that, because the application form did not specifically ask for conviction history, the information was not material and he had no obligation to disclose it. Celis's argument fails for numerous reasons.

For one, the fact that Celis engaged in the unauthorized practice of law and was convicted for doing so is material because it is directly connected to whether he is fit and possesses the requisite attributes to participate in the academically and ethically rigorous study of law in the Program's global environment, let alone fit to practice or teach law, and that information would

---

[4] Under the Contract's Sixteenth Clause, setting forth choice of law and jurisdiction, it could be argued that either Spanish or the forum's law may be applied to interpret the Contract. (Am. Celis Dec. at Ex.2.) While Celis argues that Spanish law applies, he cites no Spanish authority to support his breach of contract claim and thus has not met his burden of establishing likelihood of success on the merits under Spanish law. As set forth herein, Celis cannot establish likelihood of success on his claims under U.S. law either.

have had a direct impact on Northwestern's decision to admit him to the Program. His apparent flagrant disregard for legal and ethical conduct makes him an undesirable candidate for a LLM degree. Moreover, the fact that Celis chose to hide this information strongly suggests a lack of judgment and integrity which are essential qualities in the legal field. As someone who represented himself to be a practicing attorney in his interview, and thus presumably knowledgeable about ethical obligations in the profession, Celis certainly should have realized that the information was pertinent to his application for an LLM degree from Northwestern. Celis's assertion that this information was not material to the decision because no one specifically asked him about it is absurd and in any event fails to account for his affirmative misrepresentations.

Indeed, Celis affirmatively misrepresented his professional background in the application form. Celis described having worked for CGT, but stated that he was "senior executive management" and worked as an "office and case manager in Latin America" – not that he was practicing law at CGT. (Speta Dec. at ¶ 13.) He also affirmatively stated that the "city" where he performed his duties was "Washington DC/Mexico City," even though he worked out of CGT's Texas office. (Id.) This created an inherently misleading picture of his professional background, which was only made more egregious by the fact that he had been found guilty of practicing law without a license. *See Celis v. State*, 354 S.W.3d 7 at 15-16, *aff'd*, 416 S.W.3d 419. In short, Northwestern was misled to believe that his role at CGT involved business activity related to the practice, and did not include the illegal practice of law.

Tellingly, Celis's statements to this Court about the application process are also misleading. Contrary to his repeated assertions, the application process consists of more than just an application form and language proficiency assessment. For one, the scope of the interview was not simply an evaluation of Celis's English skills. Indeed, the IE website (through which Celis admittedly applied) specifically explains that the "main objective" of the interview portion of the process is to "fully

9

understand the candidate's professional background, experience and exposure ...." (Speta Dec. at Ex. A, IE Admissions Website.) Furthermore, as reflected in the summary of the interview, the interviewer asked questions about his personal and professional background and reasons for interest in the program. (Speta Dec., Ex. E, Celis Interview Report.) Celis did not disclose during this interview that he had engaged in the unauthorized practice of law and had been convicted for doing so. (Id.) This information was clearly part of his professional background and was patently relevant to his qualifications for admission to the Program.

In addition to the application form and interview, the application process also required Celis to submit a Curriculum Vitae ("CV") and a personal statement. (Speta Dec. Ex. C, Celis CV and Ex. E, Celis Personal Statement.) Celis's CV also misrepresents his professional experience. For example, he claims to have been a "Partner" at CGT in Washington, D.C., but fails to disclose that his duties as a "Partner" were carried out in Texas where he was not authorized to maintain an interest in a law firm without a law license. (Speta Dec. at Ex. C, Celis CV.) Nor did Celis's personal statement mention that he held himself out as a lawyer when he did not have a license or that he had been convicted of falsely identifying himself as an officer, crimes which are directly related to his course of studies at Northwestern. (Speta Dec. at Ex. E, Celis Personal Statement.) Just as importantly, during the interview, he told Northwestern that he had a law practice in Mexico.

In short, on multiple occasions in the application process Celis affirmatively misstated his professional experience. Similarly, he had several opportunities throughout the application process to disclose his criminal history so as to fully apprise Northwestern and IE of his background and qualifications for the Program. At no point during that process did Celis do so. (Speta Dec. at ¶¶ 13-15.) This resulted in Northwestern having an inaccurate perception of Celis's professional background and qualifications for the Program. (Id. at ¶ 16.) That inaccurate perception is the only reason Celis was admitted to the Program. (Id. at ¶ 19.)

10

If Northwestern was a party to the Contract, it clearly had the contractual right to rescind its decision to admit him upon learning about Celis's criminal history and misrepresentations about his background.[5] Indeed, the Contract specifically states that the consequences of making misleading statements in the application process is "the loss of the right to attend class, the loss of the right to receive the corresponding degree and/or certificate for the respective program." (Am. Celis Dec. at Ex. 2.) In short, the Contract was not breached,[6] and Celis is not likely to succeed on that claim.

### 3. *Celis Is Unlikely to Succeed Because The Contract Was Fraudulently Induced*

Celis also is not likely to succeed on the merits because Northwestern has a meritorious fraudulent inducement defense to performance of the Contract, if it is a party to the Contract. Fraud in the inducement of a contract is a defense that renders the contract voidable by the injured party, even if it otherwise contains all the elements necessary for enforceability, if the inducing party made a misrepresentation of material fact, knowing it was false, which the other party reasonably believed to be true and relied upon to its detriment. *Equity Capital Corp. v. Kreider Transp. Service, Inc.*, 967 F.2d 249, 253 (7th Cir. 1992). A party's failure to disclose material information constitutes a false statement of fact if the alleged defrauder owed a duty to disclose that information. *Id.*, 967 F.2d at 253. A misrepresentation is "material" if, among other things, the recipient would have acted differently had he been aware of the falsity of the statement. *Kleinwort Benson N. A., Inc. v. Quantum Fin. Serv., Inc.*, 285 Ill.App.3d 201, 209–10 (1996).

All of the elements of fraudulent inducement are present here. The Contract was executed in June 2013, after the application process was complete. Celis misrepresented material aspects of his work at CGT, stated he had a law practice in Mexico, and omitted his criminal history

---

[5] Northwestern decided to rescind his admission because of his misrepresentations and misleading omissions. Thus, the Spanish statute Celis cites for the proposition that it would be unlawful discriminatory to expel him based on his convictions has no application, even assuming Spanish law applies.

[6] Insofar as Celis is alleging he was denied adequate due process in connection with the decision such that he can prevail on a breach of contract claim, the Contract does not set forth such procedures and he has offered no evidence that any arguably applicable procedural rights set forth in Northwestern's Handbook apply to admission decisions. In fact, they do not. (Speta Dec. ¶ 24.)

altogether, which resulted in a misleading representation of his qualifications for admission. As explained in Sections A.1 and A.2, above, the information was clearly material. Celis had a duty to disclose it because he was specifically asked for a description of job duties in his professional background, and his criminal convictions bear a direct nexus to that professional history. *See, e.g., In re Chandler*, 161 Ill. 2d 459, 474, 641 N.E.2d 473, 480 (1994) (failure to fully and truthfully respond to inquiries on bar application held to be fraud). Finally, if either IE or Northwestern were aware of Celis's criminal background they would not have admitted him to the Program and the Contract would not have been executed. (Speta Dec. at ¶ 19.) In short, Celis cannot enforce the Contract that he fraudulently induced.

B. **There Is No Evidence Of An Inadequate Remedy At Law**

In *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984), the Seventh Circuit set forth four general circumstances that could result in an inadequate legal remedy, only one of which Celis argues here: when the nature of the loss incurred makes it difficult to calculate damages. Celis presents no evidence that his damages are difficult to calculate. On the contrary, Celis essentially concedes that he could be made whole by a monetary award. Celis requests a specific money judgment in excess of $76,000 for the alleged breach of contract, consisting of lost tuition and alleged lost airfare and lodging to attend classes and for graduation, for which he specifies the amount of each purported category of damage. (Comp. at ¶¶ 3, 32.) These allegations totally undermine Celis's argument that no adequate remedy is available to him.

The litany of adverse consequences Celis alleges will result if he is precluded from receiving injunctive relief – lost future earnings and lost future benefits of the degree – do not advance his argument. These types of damages are too speculative to support the imposition of an injunction, particularly given that Celis maintains his positions of CEO at two corporations in Texas. *See Roland*, 749 F.2d at 391 (injunction not appropriate where projected lost profits will not force the

plaintiff "out of business"). Celis has not met his burden of showing there is no adequate remedy at law.

C. **There Is No Evidence Of An Irreparable Harm**

Irreparable harm is harm that cannot be prevented or fully rectified by the final judgment after trial. *Seaga Mfg., Inc. v. Intermatic Mfg.*, Ltd., 13 C 50041, 2013 WL 773037 (N.D. Ill. Feb. 28, 2013). For that reason, injunctive relief is generally disfavored where – like here – the gravamen of the complaint is breach of contract and the Court could award damages if it found a breach occurred. *Id.* Moreover, irreparable harm must be "imminent." *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 844 (7th Cir. 2005).

Thus, purely speculative alleged injuries like possible harm to one's future career opportunities – do not constitute irreparable harm. *See Quinnipiac*, 2010 WL 2011152, *5-6 (rejecting the contention that plaintiff would suffer irreparable harm because missing classes for one semester would impede his future educational and career opportunities). Celis's assertion that he will lose a future job opportunity from an unidentified law school in Mexico is wildly speculative and certainly does not constitute the "certain" and "imminent" harm necessary to support a request for injunctive relief. The only evidence Celis submits is a self-serving declaration that he has received a job offer from an unidentified law school in Mexico that is contingent upon completion of the Program. (Am. Celis Dec. at ¶ 22.) Celis submits no written offer from this unidentified institution, and, importantly, does not identify a proposed start date that would make the purported harm imminent.[7] Further highlighting the speculative (if not dubious) nature of the purported harm, Celis presents no evidence of the expected compensation or length of appointment for the position.

---

[7] In fact, Celis's declaration suggests that the offer from the unidentified law school was made *before* he even applied to the Program in December 2012 (Am. Celis Dec. at ¶ 5), suggesting that this unnamed school has already held his offer open for nearly two years. Moreover, contrary to that sworn assertion, his application form repeatedly states that his goal was to "stay in the current organization" "at the current level of responsibility" – i.e., CEO of two companies in Texas. (Id. at Ex. 1, Application Form.)

13

Celis also contends that he will suffer "embarrassment and reputational harm in front of his family and friends" if he cannot attend the classes set for April 30-May 16, 2014 and graduate in May. (Pl. Memo at 10-11.) This argument misses the mark because, again, the only claim underlying Celis's request for injunction is breach of contract and it is well-settled losses for "emotional and mental injuries" are not recoverable in contract. *Knapp v. Eagle Prop. Mgmt. Corp.*, 54 F.3d 1272 (7th Cir. 1995). Moreover, courts have consistently held that damage to reputation does not constitute irreparable harm.[8] *See Sampson v. Murray*, 415 U.S. 61, 91-92, 94 S. Ct. 937, 953, 39 L. Ed. 2d 166 (1974) (reputational harm "falls far short of the type of irreparable injury[.]").

Celis's claim of irreparable harm also completely ignores the fact that Northwestern offers frequent and numerous opportunities for registration and attendance in courses that would satisfy his requirements. (Speta Dec. at ¶ 25.) The same or similar course offerings are available beginning in May, June and July, and thereafter. It is not as though if Celis is not permitted to take the coursework beginning on April 29, 2014 he will forever lose the opportunity to do so. If this Court ultimately decides that Celis is entitled to complete the Program he will have numerous opportunities to make up the coursework and obtain his diploma. In other words, the purported harm, i.e., not being able to attend class this coming week is not imminent or irreparable in any way, shape or form. There is simply no "emergency" that would justify a TRO.

### D. The Balance Of Hardships Tips Decidedly In Favor Of Northwestern

Here, the hardship to Northwestern if this Court were to enter a temporary restraining order requiring it to re-admit Celis far outweighs the alleged "irreparable harm" Celis would suffer (which as explained above, is negligible if not nonexistent). Northwestern is a preeminent institution, and a degree from the School of Law conveys that Northwestern has assessed the individual's qualifications and deemed him or her fit to hold a legal degree. Moreover, as a revered

---

[8] Even so, Celis's attempt to portray his inability to take classes and to graduate as "embarrassing" and the cause of "reputational harm" is especially ludicrous given Celis's prior convictions.

14

institution the School of Law owes a duty to the public to ensure that it produces graduates who are honest, ethical and fit to work in the legal field. These interests far outweigh Celis's interest in attending class this week, especially considering that if he prevails in this action he may take the requisite courses at a later date. The Seventh Circuit answered almost this exact question in *Martin v. Helstad*, noting:

> The threatened injury to the appellant—delay in beginning his law school career at the University of Wisconsin—pales before the threatened injury to the Law School and the public interest if an unsuitable candidate is admitted to the Law School. Both the Law School's and society's interest in producing honest lawyers is deserving of great protection.

699 F.2d 387, 392 (7th Cir. 1983). On balance, it would undoubtedly be more harmful to force Northwestern to admit a student who has been convicted of falsely holding himself out as a lawyer and of impersonating a peace officer - than to postpone Celis's ability to take classes.

## CONCLUSION

For the foregoing reasons, Defendant Northwestern University respectfully requests the Court deny Plaintiff Mauricio Rodriguez Celis's Emergency Motion for Temporary Restraining Order and Limited Injunction.

Dated: April 28, 2014

Respectfully submitted,

By: /s/Anneliese Wermuth
    One of the Attorneys for Defendant
    Northwestern University School of Law

Anneliese Wermuth (IL 6270970)
Jenny R. Goltz (IL 6290036)
Meckler Bulger Tilson Marick & Pearson LLP
123 North Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 474-7900
(312) 474-7898
anna.wermuth@mbtlaw.com
jenny.goltz@mbtlaw.com

# CERTIFICATE OF SERVICE

The undersigned attorney certifies that on April 28, 2014, a copy of **Northwestern's Memo In Opposition to Plaintiff's Emergency Motion For Temporary Restraining Order And Limited Injunction** was filed electronically with the Clerk of the Court using the CM/ECF system. The parties may access this filing through the Court's electronic filing system, and notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

> Rosa M. Tumialan
> Heather L. Kramer
> Melanie J. Chico
> Dykema Gossett PLLC
> 10 South Wacker Drive, Ste. 2300
> Chicago, IL 60606



/s/Anneliese Wermuth

N:\shared\WermuthA\NW-Celis - cos-ECF-AW.doc